IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

AMANDA WHEELER,

                Plaintiff,                      OPINION AND ORDER

    v.

                                                      20-cv-1055-wmc

CAVALRY SPV I, LLC,

                Defendant.

In this case, plaintiff Amanda Wheeler alleges that defendant Cavalry SPV I, LLC ("Cavalry") violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, as well as Wis. Stat. § 100.18, by filing a small claims action against her despite not previously providing a proper right to cure letter as required by Wis. Stat. § 425.105. In response, defendant has moved to compel arbitration of plaintiff's claims. (Dkt. #9.) For the reasons discussed below, the court will grant defendant's motion, and dismiss this case without prejudice to either party.

BACKGROUND[1]

On or about October 10, 2009, Wheeler obtained a Citi Sears credit card from Citibank. Citibank cardmember accounts are governed by written card agreements, which are amended from time to time. Defendant has attached a copy of the card agreement ("the Agreement" or "the 2016 Agreement"), which it asserts governed Wheeler's account

---

[1] A motion to compel arbitration is reviewed in a manner similar to one for summary judgment: the court considers all evidence in the record and draws all reasonable inferences in the light most favorable to the non-moving party. *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002); *Scheurer v. Fromm Family Foods LLC*, No. 15-CV-770-JDP, 2016 WL 4398548, at *1 (W.D. Wis. Aug. 18, 2016). Applying this standard, the court provides the following factual background before addressing the merits of defendant's motion.

in 2016 and 2017. This Agreement includes an arbitration provision, which states in relevant part:

### ABRITRATION

*PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.*

**THIS SECTION PROVIDES THAT DISPUTES MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, HAVE A JURY TRIAL, OR INITIATE OR PARTICIPATE IN A CLASS ACTION. IN ARBITRATION, DISPUTES ARE RESOLVED BY AN ARBITRATOR, NOT A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN COURT. THIS ARBITRATION PROVISION IS GOVERNED BY THE FEDERAL ARBITRATION ACT (FAA), AND SHALL BE INTERPRETED IN THE BROADEST WAY THE LAW WILL ALLOW.**

#### Covered claims

- *You or we may arbitrate* any claim, dispute or controversy between you and us arising out of or related to your account, a previous related account or our relationship (called "Claims").
- **If arbitration is chosen by any party, neither you nor we will have the right to litigate that Claim in court or have a jury trial on that Claim.**

. . .

Arbitration may be requested any time, even where there is a pending lawsuit, unless a trial has begun or a final judgment entered. Neither you nor we waive the right to arbitrate by filing or serving a complaint, answer, counterclaim, motion, or discovery in a court lawsuit.

. . .

This arbitration provision shall survive changes in this Agreement and termination of the account or the relationship between you and us, including the bankruptcy of any party and any sale of your account, or amounts owed on your account, to another person or entity.

(Gauper Decl., Ex. A (Cardholder Agreement) (dkt. #10-1) 6-7 (emphases in original).)

"[W]e, us, and our" is defined to mean "Citibank, N.A." (*Id.* at 2.)

The arbitration provision also specifies certain exclusions, including that: "Individual Claims filed in a small claims court are not subject to arbitration, as long as the matter stays in small claims court." (*Id.* at 7.) The Agreement further states more generally that it "is binding on you unless you close your account within 30 days after receiving the card and you have not used or authorized use of the card," as well as that "[f]ederal law and the law of South Dakota . . . govern the terms and enforcement of this Agreement." (*Id.* at 2, 8.) Finally, the Agreement explains that "[w]e may assign any or all of our rights and obligations under this Agreement to a third party." (*Id.* at 8.)

After adoption by amendment, Citibank mailed a copy of the 2016 Agreement to Wheeler as a current card holder at her address in Hayward, Wisconsin. Additionally, Citibank's regular business practice was to: mail these written card agreements to the cardmember; note in the cardmember's record if mail is returned as undeliverable; and track when a cardmember rejects a card agreement. Citibank has no records that any card agreement sent to Wheeler was returned as undeliverable or that Wheeler rejected any agreement. Moreover, Wheeler used the card as late as June 5, 2017.

On June 27, 2019, after Wheeler's account had been charged off, Citibank "sold all rights, title[,] and interest in the Account to Cavalry SPV I, LLC." (Gauper Decl. (dkt. #10) ¶ 12.) Defendants provide a copy of this Bill of Sale and Assignment, which states in part:

> THIS BILL OF SALE AND ASSIGNMENT dated June 27, 2019, is by Citibank, N.A. . . . to Cavalry SPV I, LLC . . . . For value received and subject to the terms and conditions of the Master Purchase and Sale Agreement dated February 18, 2019

3

> and Addendum No. 9 dated June 24, 2019, between Buyer and the Bank (the "Agreement"), the Bank does hereby transfer, sell, assign, convey, grant, bargain, set over and deliver to Buyer, and to Buyer's successors and assigns, the Accounts described in Exhibit 1 to the Addendum and the final electronic file.

(Gauper Decl., Ex. C (dkt. #10-3) 2.)

OPINION

Enforcement of an arbitration clause is governed by the Federal Arbitration Act ("FAA") 9 U.S.C. § 1, *et seq.*, which states in relevant part

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The Supreme Court has explained that the FAA evinces a "national policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)). To that end, the FAA "leaves no place for the exercise of discretion," but rather mandates that courts "*shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). Moreover, any doubts as to whether the arbitration clause is susceptible to an interpretation that would cover the asserted dispute should be "resolved in favor of coverage." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). Still, the party seeking to compel arbitration has the burden of showing that the parties are bound by the arbitration clause. *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054,

4

1063 (7th Cir. 2018).

"At bottom . . . arbitration is contractual." *Scheurer v. Fromm Fam. Foods LLC*, 863 F.3d 748, 752 (7th Cir. 2017). Thus, "[w]hether a binding arbitration agreement exists is determined under principles of state contract law." *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 733 (7th Cir. 2002) (citing 9 U.S.C. § 2; *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Here, the 2016 Agreement produced by defendant (which, as discussed below, is the operative agreement) provides that South Dakota law governs the terms and enforcement of the Agreement, and so that is the law that this court will apply.[2]

In addition to what appears on its face to be a binding agreement, defendant argues that: the arbitration provision in the Agreement is valid and enforceable; plaintiff's claims fall within the scope of the arbitration provision; and this court, therefore, must compel arbitration. In response, plaintiff offers a number of contrary arguments. First, she questions the relevance of the 2016 Agreement, arguing instead that the agreement that she received when she first opened her account in 2009 is the operative one. Second, she asserts that any agreement she had with Citibank does not extend to Cavalry. Third, she argues that even if Calvary had a right to arbitrate with Wheeler, it waived this right.[3] Each of these arguments are addressed in turn below.

---

[2] Wisconsin's choice of law rules, which this court applies as its forum state, generally respect party choice, *see Diesel Serv. Co. v. AMBAC Int'l Corp.*, 961 F.2d 635, 637 (7th Cir. 1992). Here, neither party has presented this court with a reason not to apply the choice of law clause contained in the 2016 Agreement.

[3] Although plaintiff categorized these arguments somewhat differently in her brief, this reorganization captures all of her principal arguments in a more logical fashion. (*See* Pl.'s Opp'n (dkt. #11) 2-7.)]

I.  **Relevant Agreement**

Plaintiff first argues that the relevant card agreement is the one Wheeler was presented with when first opening her account in 2009, not the 2016 Agreement produced by defendant. However, defendant has produced evidence showing that the terms of the 2016 Agreement were properly offered to plaintiff; that she accepted; and that the Agreement was operative during the time relevant to this suit (namely, when Wheeler's account was charged off in 2017). In particular, defendant has shown that it was Citibank's regular business practice to mail amended cardholder agreements to its cardholders, and even more specifically that it had mailed the terms of the 2016 Agreement to Wheeler. Indeed, plaintiff does not dispute that she received that agreement, and Citibank has no record of it being returned as undeliverable.

Further, the Agreement expressly states that it is binding on the cardholder "unless you close your account within 30 days after receiving the card and you have not used or authorized use of the card." (Cardholder Agreement (dkt. #10-1) 2.) Citibank has no record of Wheeler closing her account; indeed, defendant has shown that plaintiff continued to use her card after receiving the 2016 Agreement. Thus, the mailing of the 2016 Agreement constituted an offer and Wheeler's continued use of her card was an acceptance of the terms and conditions -- including the arbitration clause -- set forth in the Agreement. *See* S.D. Codified Laws § 54-11-9 ("The use of an accepted credit card or the issuance of a credit card agreement and the expiration of thirty days from the date of issuance (without written notice from a card holder to cancel the account) creates a binding contract between the card holder and the card issuer with reference to any accepted credit

card, and any charges made with the authorization of the primary card holder."); *Boomer v. AT & T Corp.*, 309 F.3d 404, 415 (7th Cir. 2002) (holding that the plaintiff accepted the terms of an amended customer services agreement, including an arbitration clause, by continuing to use the defendant's services); *Ineman v. Kohl's Corp.*, 2015 WL 1399052, at *4 (W.D. Wis. Mar. 16, 2015) (continued use of a credit card by the cardholder constitutes acceptance of the terms of the credit card agreement, including its arbitration clause.)

**II. Ability of Cavalry to Enforce the Arbitration Clause**

Plaintiff next offers two reasons why, according to her, defendant has failed to establish that it has a right to enforce the arbitration clause against Wheeler. *First*, she points out that the arbitration clause refers only to "you" and "we," with the latter defined as "Citibank, N.A." (Cardholder Agreement (dkt. #10-1) 2, 6.) Thus, plaintiff argues, the arbitration clause by its terms does not apply to Cavalry. However, the Agreement additionally provides that Citibank may assign "any or all" of its rights under the Agreement to a third party, and the arbitration clause likewise provides that it survives termination of the relationship between the cardholder and Citibank, including the sale of the account. (*Id.* at 7, 8.)

Under South Dakota law, "[t]he goal of contract interpretation is to determine the parties' intent." *Tri-City Assocs., L.P. v. Belmont, Inc.*, 845 N.W.2d 911, 915 (S.D. 2014). In doing so, courts must examine contracts "as a whole," giving "reasonable and effective meaning to all terms" and avoiding interpretations that "render[] a portion of the contract meaningless." *Coffey v. Coffey*, 2016 S.D. 96, ¶ 8, 888 N.W.2d 805, 809. Moreover, South Dakota permits assignment of contract rights, holding that the "assignee stands in the same

7

shoes as the assignor." *Kroeplin Farms Gen. P'ship v. Heartland Crop Ins., Inc.*, 430 F.3d 906, 911 (8th Cir. 2005) (quoting *In re Estate of Wurster*, 409 N.W.2d 363, 366 (S.D. 1987) (Wuest, C.J., dissenting)).

In this case, plaintiff's reading of "we" would render the assignment provisions in the contract meaningless. Not only would Citibank not be able to assign its rights to arbitration, it would not be able to assign practically any rights under the Agreement, as the term "we" is used throughout. Thus, the use of "we" in the Agreement cannot reasonably be interpreted to preclude Citibank from assigning its right to arbitrate to a third party, such as Calvary. *See In re Midland Credit Mgmt., Inc. Tel. Consumer Prot. Litig.*, 2019 WL 398169, at *6 (S.D. Cal. Jan. 31, 2019) (holding that the use of "we" defined as "Citibank" in a similar cardholder agreement did *not* preclude Citibank from assigning its right to compel arbitration to a third party).

*Second*, plaintiff argues that defendant has not produced sufficient evidence to show that Citibank *in fact* assigned its right to arbitrate a dispute to Cavalry. Again, however, defendant has presented solid evidence in the form of sworn testimony from B Gauper, a Citibank employee, who explains that Citibank "sold all rights, title[,] and interest in the Account to Cavalry SPV I, LLC," (Gauper Decl. (dkt. #10) ¶ 12) and substantiated this by producing the "Bill of Sale and Assignment." (Gauper Decl., Ex. C (dkt. #10-3) 2.) While plaintiff also complains that defendant has failed to produce the original "Master Purchase and Sale Agreement" referenced in the Bill of Sale, but there is no requirement that defendant do so. *See Grant v. Houser*, 469 Fed. App'x 310, 315 (5th Cir. 2012) (contract of sale and assignment not necessary to compel arbitration where there is

evidence of assignment by affidavit or declaration); *Brecher v. Midland Credit Mgmt., Inc.*, 2019 WL 1171476, at *6 (E.D.N.Y. Mar. 13, 2019) (bill of sale and affidavit sufficient to show that bank had assigned its arbitration rights to debt purchaser).

Accordingly, the evidence produced by defendant is sufficient to show that Citibank assigned all of its rights under the Agreement, including the right to compel arbitration, to Cavalry.

**III. Waiver**

Plaintiff's final argument is that even if Cavalry had a right to compel arbitration with Wheeler, it waived this right by filing a small claims collection action against her in state court and by "waiting too long" to seek to compel arbitration in the present case. (Pl.'s Opp'n (dkt. #11) 6.) In particular, plaintiff complains that "[o]nly after the underlying small claims case was dismissed, its motion to reopen the state case was denied and it was sued did Cavalry seek to change from a court to an arbitrator." (*Id.*) However, the small claims action filed by Cavalry against plaintiff was a distinct action, and does not operate as a waiver in the present case. *See Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prod., Inc.*, 660 F.3d 988, 996 (7th Cir. 2011) (participation in litigation in a separate, although related, case did not operate as a waiver of the defendant's right to compel arbitration in a subsequent case); *Hodson v. Javitch, Block & Rathbone, LLP*, 531 F. Supp.2d 827, 831 (N.D. Ohio 2008) (holding that prior state court collections action did not constitute waiver of right to arbitrate in later federal court action); *Schwartz v. CACH, LLC*, 2014 WL 298107, at *3 (D. Mass. Jan. 27, 2014) (same). Moreover, the arbitration clause itself exempts small claims actions from arbitration, and specifically explains that

9

arbitration may be requested "any time" prior to a trial or final judgment. Regardless, defendant here did *not* delay its arbitration request in the present case, as it filed the instant motion before it even answered plaintiff's complaint.

Accordingly, the court finds that: the 2016 Agreement produced by defendant is the operative contract; Citibank assigned its rights under the Agreement to Cavalry, including its right to compel arbitration; and Cavalry did not waive its right to compel arbitration. Having so ruled, the court finds that the arbitration clause encompasses the dispute at issue. Indeed, defendant does not argue otherwise, and the clause at issue broadly covers any claim arising out of or relating to Wheeler's Citibank account. As such, the court concludes that defendant has shown plaintiff is required to arbitrate her claims.

The final issue is what to do with the present case while arbitration is pending. Defendant here requests that this case be stayed rather than dismissed, perhaps following the Seventh Circuit's general rule that the successful invocation of an arbitration clause results in a stay, rather than outright dismissal, of the proceedings. *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 561 (7th Cir. 2008). However, "[w]hen all of the claims raised in a lawsuit are subject to arbitration . . . there is an exception to this general rule" and dismissal may be appropriate. *Emps. Ins. of Wausau v. Cont'l Cas. Co.*, No. 15-CV-226-WMC, 2016 WL 632642, at *3 (W.D. Wis. Feb. 17, 2016) (citing cases discussing Seventh Circuit's affirmance of dismissal of matters pending arbitration). Because all of the current claims are subject to arbitration here, therefore, this court will dismiss the present action without prejudice to either party filing a new lawsuit to seek confirmation of or challenge the arbitrators' decision.

ORDER

IT IS ORDERED that:

1) Defendant's motion to compel arbitration (dkt. #9) is GRANTED.  This action is dismissed without prejudice to either party.

2) The clerk of court is directed to close this case.

Entered this 23rd day of March, 2022.

                        BY THE COURT:

                        /s/

                        _____
                        WILLIAM M. CONLEY
                        District Judge